Marshall vs. Holmes.

---

. MARSHALL, Respondent, vs. HOLMES, Appellant.

*March 22 — April 12, 1887.*

*(1, 2)* Appeal to S. C.: Verdict: Evidence: Nonsuit. *(3-5)* Statute of limitations: New promise: Consideration: Part payment.

1. A verdict found upon evidence which is contradictory, or the credibility of which is questioned, will not be disturbed on appeal unless there is a clear preponderance of evidence against it.

2. A nonsuit is improper, where the evidence, though contradictory, will sustain a verdict for the plaintiff.

3. A debt which has become barred by the statute of limitations is yet a good consideration for a payment or a promise to pay it.

4. Where a debtor, on being asked to pay an account, voluntarily delivers money to the creditor, without questioning his indebtedness or liability, and promises to pay more in the future, and accepts and retains a receipt for the amount as paid on account, that constitutes a completed payment; and the debtor cannot, at a subsequent time, add qualifications or conditions to such payment, so as to avoid its effect under the statute of limitations.

5. An unconditional, unqualified, and unequivocal part payment of a debt, voluntarily made by the debtor or by any person legally liable to pay it, after such debt has become barred by the statute of limitations, is sufficient evidence of a new or continuing contract to revive and take such debt out of the statute; and such a payment by one joint debtor has that effect as against him.

APPEAL from the Circuit Court for *Price* County.

The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Cate, Jones & Sanborn*, and oral argument by *Mr. Jones:* The lapse of time fixed by the statute of limitations destroys the debt, and not the remedy merely. *Brown v. Parker*, 28 Wis. 21; *Carpenter v. State*, 41 id. 36; *Pierce v. Seymour*, 52 id. 272. And a debt so barred is no consideration to support a payment or a new promise. Payment of a part, after a debt is so extinguished, accompanied by the words "I make you a present of it," is not equivalent to the unqualified promise to pay the debt, made within the time limited, which is required by the case of *Pritchard v. Howell*, 1 Wis. 138. An extinguished debt cannot be revived by a subsequent promise or payment. *Sigourney v. Drury*, 14 Pick. 387. This point was not involved in the case of *Engmann v. Estate of Immel*, 59 Wis. 259. For a payment to have that effect, it must be made on account of the particular debt, with intent to have it applied thereon, and be accompanied by a promise to pay the remainder. Angell on Lim. 240, 257, 267; *Brisbin v. Farmer*, 16 Minn. 215; *Davis v. Edwards*, 6 Eng. L. & Eq. 520; *Kimball v. Kimball*, 16 Mich. 221; *Chambers v. Marks*, 25 Pa. St. 296;

*Vaughn v. Hankinson's Adm'r*, 35 N. J. Law, 79; *Barclay's Appeal*, 64 Pa. St. 69. The attending circumstances in this case repel the inference of a new promise. *Roscoe v. Hale*, 7 Gray, 274; *Bell v. Morrison*, 1 Peters, 362; *Carroll v. Forsyth*, 69 Ill. 127.

For the respondent there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Wigman*.

ORTON, J. The facts, as testified to by Joseph Brown, the assignor of the plaintiff, are substantially as follows: Brown was a manufacturer and dealer in saddles, harnesses, robes, blankets, etc., and between the 3d day of December, 1872, and the 24th day of February, 1875, sold to the firm of Holmes & Thompson, of which the defendant was a partner, goods to the agreed amount of $403.13. Nothing had been paid on this account until the 24th day of September, 1882, when the defendant paid him (Brown) $20, and said he would let him have $20 *now*, and, if he had good luck in lumbering the next winter, he would pay him half if not the whole claim. This payment was made at Ogema, and out of doors between the barn and store of the defendant. They then went into the store, and Brown handed the defendant a receipt, which he took, saying he did not want a receipt and he would make him a present of that. Brown said, "You may as well take the receipt, because I don't want you to pay it twice over." The defendant then took the receipt and put it in his pocket. He did not tell Brown that he did not owe him anything. Brown, as a witness, was asked how the receipt was drawn, and, this being objected to by the defendant's counsel, a formal demand was then made upon the defendant for its production, who said: "We cannot comply with the demand, as we have never had such a thing in our possession." Brown then stated that the receipt was: "Received of *B. M. Holmes* $20, on account." The defendant and Thompson

had dissolved their copartnership, and the defendant had assumed to pay the debts, and at one time agreed to give Brown his note for this account. The account was sold and transferred by Brown to the plaintiff about the middle of February, 1884, before the commencement of this suit; and soon thereafter the defendant, in conversation with the plaintiff, and when the payment of the account was demanded by him, refused to pay it. The plaintiff then said, "You paid $20 on it;" and the defendant said, "Yes, I paid $20." The plaintiff then said, "Well, that renews the account." The defendant then said, "Well, I gave it to him."

This is the case as made by the plaintiff, and thereupon the defendant's counsel moved for a nonsuit, which was refused, and this is the first exception. The defense relied upon was the statute of limitations of six years, and this payment was made after it had run upon the account. I have made a full statement of the facts shown by the plaintiff's evidence, because the decision of the motion for a nonsuit disposes of the case upon its merits; for, if the jury had a right to find for the plaintiff on these facts alone, we could not disturb the verdict, no matter how strongly they may have been contradicted or disputed by the testimony for the defendant. When the evidence is contradictory, or its credibility is in question, it is the peculiar province of the jury to decide, and unless there is a clear preponderance of the evidence against the verdict it will not be disturbed. We cannot find that there is any preponderance of the evidence against the above facts, after giving due weight to the testimony on behalf of the defendant. The case may therefore as well be determined on the motion for a nonsuit. The learned counsel of the appellant contends that a payment upon a debt already barred by the statute will not extend or again set in operation the statute for another six years, however unconditional or unqualified it may be; and challenges the decision of this question in *Engmann v. Estate of*

*Immel*, 59 Wis. 249, as not being properly in that case. It was conceded in the opinion in that case that this question might not be strictly in the case; nevertheless this court saw fit to decide it, as being necessarily involved in the construction of the statute. We can see no good reason for reproducing here the reasons there given or the citations of authority there made, and need only say that if the decision of this question in that case was extrajudicial we will now give it the impress of authority by adoption, and say, in brief, that we are of the opinion that an unconditional, unqualified, and unequivocal part payment, voluntarily made by the debtor or any person legally liable to pay it, of a debt already barred by the statute of limitations, is sufficient "evidence of a new or continuing contract, whereby to take the cause out of the operation of the statute of limitations."

As we understand the statute, the "effect" of such a payment as is mentioned in sec. 4247, R. S., is the same in all respects as that of an acknowledgment or promise in writing signed by the party to be charged thereby, mentioned in sec. 4243, R. S. The provisions as to joint contractors, etc., following each of said sections, in secs. 4244 and 4248, are substantially alike; and the condition or proviso in sec. 4247, that no memorandum or indorsement by the party to whom such *payment* is made "shall be deemed sufficient proof of the payment, *so as to take the case out of the operation of the provisions of this chapter*" (or of the statute of limitations, which is the same thing), shows conclusively that payment shall have exactly such an effect. But a reference to the above case is sufficient on this question.

The remaining question is, Do these facts show such a payment? When the payment was made by the defendant and received by Brown, the then owner of the account, nothing was said, except the defendant promised to pay the half or the whole of the remainder of the account if he had good

luck in lumbering the coming winter. The payment as such was finished and complete. What the defendant said afterwards in the store, about making Brown a present of the $20, may have been a prudential after-thought, but he nevertheless accepted and pocketed the receipt for the $20 *on account*. After the payment of the $20, and the promise to pay more afterwards, without questioning his liability or denying the indebtedness, if any length of time elapsed afterwards it was too late for the defendant to add qualifications or conditions to such payment, so as to avoid its effect under the statute. The length of time would not be material, if the payment was completed and was at the time unqualified. If the offer of the $20 payment or the payment had been preceded or accompanied by the qualification or condition that it was to be received as a *gift*, and not as a payment on the account, Brown might, and probably would, have refused it. But he received it as a payment on the account, and had no chance to reject it as a gift. Suppose the case had been reversed, and the account had not been barred by the statute, and the defendant had paid precisely in this way $20 upon it, could Brown, even a short time afterwards, have said, "I accepted that $20 as a *gift*, and not as payment on the account," or would that have qualified the payment? The effect of the defendant's subsequent statement that he made Brown a present of the $20 is destroyed by his accepting and pocketing the receipt for it *on account*. We think that the case made by the plaintiff was sufficient to entitle him to a verdict, and that the motion for a nonsuit was properly overruled.

The defendant, as a witness, gave an entirely different version of the matter. He testified that Brown came to him, and said that he had lost his property, and was poor, and had borrowed money to come there; "and wanted him to pay him something on the account." He told him he owed him nothing, and claimed that part of the account

belonged to Thompson individually, and that he had paid his part of it. He then testified as follows: "I pulled out a $20 gold piece and handed it to him, and told him I would give it to him to help him along that much. That occurred by the steps that were near the store steps, I think." The defendant testified, further, that he never had any such talk with Brown as he testified to; that he never agreed to pay him anything, and, when he told him that he would make him a present of the $20, he said he would send him a receipt after he got home. It will be observed that the defendant testified that Brown "wanted him to pay something on the account, and that he then pulled out a $20 gold piece, and handed it to him and told him he would give it to him to help him along *that much*, and he claimed that he had paid his half of the account." This occurred when they were out doors, by the lower or some steps near the store steps. This evidence would not seem to be inconsistent with Brown's testimony that the defendant said he would let him have $20 *now*, and would pay him more the next winter. Letting him have $20 *now* is very much like giving him $20 to help him along *that much*. But the most that can be said about the evidence is that it was contradictory and depended very much upon the credibility of the defendant and the witness Brown. There is no such preponderance of the evidence in favor of the defendant as would justify a disturbance of the verdict. The learned counsel of the appellant claims that the verdict was for too much, because, according to the testimony of Brown, at least about $19 of the account sued upon was the individual debt of Thompson. The testimony of Brown was that the defendant and Thompson had dissolved their copartnership, and that the defendant had assumed to pay all the debts. But, besides this, the court instructed the jury that if they found for the plaintiff, their verdict would be for

the balance of the principal claim of $383.13, and interest thereon from September 14, 1882, at seven per cent. per annum.   This instruction was not excepted to, nor was the attention of the court called to the fact that such $19, which was included in the charge, was not the debt of the defendant, and there was no such claim asserted when the $20 was paid on the account.

Perhaps, out of deference to the able and distinguished counsel of the appellant, his ingenious but specious argument, based upon several decisions of this court in respect to the effect of the statute of limitations after it has fully run upon the cause of action thereby barred, ought to have further notice.   He claims that this court has repeatedly held that such effect is *to utterly destroy the right itself and extinguish the debt,* and argues that, if so, there is no consideration left to support a new contract or continuance of the obligation by *payment* of a part of the debt.   Such payment has the same effect as a promise in writing, as we have shown; and it might therefore be answered that neither is there any consideration to support such written promise; and the learned counsel cites authorities that a promise in writing might have such effect.   The *right* of action may be destroyed by the statute having run upon the *cause* of action, and the *debt* may be extinguished thereby; yet the original consideration — that is, the goods sold and delivered to the defendant — still remains as an existing fact, and will remain until it is paid.   The debt as a *legal* obligation may be extinguished, but the debt as a moral obligation remains.   This is sufficient to give logical as well as legal effect to the statute.   But it is no legitimate inquiry of the courts as to whether any particular statute is consistent with one theory or another, or any theory.   It is sufficient that the statute giving such effect to an unconditional and unqualified payment upon a debt

as still existing is plain and can have no other construction. We can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 32 N. W. Rep. 686.— REP.