J. E. EBERSOLE v. OMAHA NATIONAL BANK.

FILED MAY 5, 1904.   No. 13,517.

1. **Debt**: PART PAYMENT: STATUTE OF LIMITATIONS. A part payment operates to revive a contract debt, barred by the statute of limitations, of its own vigor and not as evidence of an acknowledgment or new promise.

2. **Evidence**. The evidence in this case held to be insufficient to support the defense of the statute of limitations.

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE. *Affirmed*.

*Frank Heller*, for plaintiff in error.

*Hamilton & Maxwell*, contra.

AMES, C.

This is a proceeding in error to reverse a judgment, pursuant to a verdict for the plaintiff below, returned in obedience to a peremptory instruction by the court. The action was upon a book account and three promissory notes of the defendant. The defense was the statute of limitations. The notes were dated and given January 31, 1893, and were payable on demand. The book account

was of transactions extending from that date until November 30, 1897.   The plaintiff below is assignee of the payee of all these obligations.   At some time, not specified by counsel, the debtor delivered to the payee, one J. A. Fuller & Co., a policy of insurance upon the life of the former, as collateral security for the payment of the indebtedness. On February 12, 1898, the policy was entrusted to the debtor to enable him to obtain its cash surrender value, and pay the proceeds upon the indebtedness, and to substitute a new policy for the old one.   On the 14th of July, 1898, the debtor transmitted the money and the new policy to his creditors, inclosed with the following letter:

"*Messrs. J. A. Fuller & Co., Omaha*—Gentlemen: Herewith please find policy number 120,968 on my life, assigned to J. H. Dumont, to secure payment of my indebtedness to him and you.   Also check for $75.35, dated August 1, 1898, being the amount of the surrender value of the policy of like amount held by you for the same purpose, the cash value clause of which was extended until next anniversary on account of payment of last premium by note.   Paid up insurance becomes automatic under the policy condition.

    "Respectfully,        James E. Ebersole."

There was no later communication between them.   Fuller & Co. applied a part of the money, proceeds of the check, on each of the notes, and a part on the book account. This action was begun within 4 years thereafter.   The maker contends that the notes were barred, and therefore no longer a subsisting indebtedness against him, and that all the money should have been appropriated toward the payment of the book account as being the only indebtedness of his to which it was applicable, or, in other words, that his creditors were without authority to make use of the money to revive the obligation of the barred notes.

The statute enacts (code, sec. 22):   "In any cause founded on contract, when any part of the principal or interest shall have been paid,   *   *   *   an action may

be brought in such case within the period prescribed for the same, after such payment." The section provides that the debt may also be revived by a new promise or acknowledgment in writing, so that it would seem that a part payment does not effect the removal of the bar, because of being evidence of a new promise or of an acknowledgment, which are void if not written, but because of its own proper vigor. This being so, authorities cited by plaintiff in error, deciding that the holder of collateral who collects the same can not apply the proceeds upon barred debts, because his right to collect and appropriate does not include authority to make a new promise or an acknowledgment for his debtor, seem to us to be not in point. Here, as it seems to us, the only question is, whether the application of the money to the barred notes was a lawful appropriation of it. If it was so, it constituted part payment upon them, and had all the legal consequences of any other such part payment. If it was not, the payee is accountable for the money, in the same manner, and to the same extent, as in any other case of tortious conversion or embezzlement of trust funds. We can not think that any court would hold him so liable. The debt upon the notes was not discharged, but remained a moral obligation. The letter gave, in effect, general authority to apply the proceeds of the collateral to the payment of the indebtedness of the maker, without specifying in what manner it should be distributed among the different descriptions thereof, and we do not see that the creditor exceeded his authority.

The question was discussed somewhat at the bar, whether the statute ever ran against the notes. They were payable on demand, and no demand of their payment seems ever to have been made. They were secured, in part at least, in common with the book account, by collateral, and, until within less than 5 years before the beginning of the action, business relations and transactions other than with reference to these obligations continued between the parties. If the intent of the parties may be gathered

from their conduct, the substitution of collateral and the payment of money above related had as direct reference to the notes as to the book account. The old policy was admittedly collateral to the notes. When it was entrusted to the plaintiff in error, he gave a written receipt for it, reciting that its cash surrender value and a new policy were to be "substituted" for it. That is, to take the place of it and to be charged with the same duty and obligation as it had been bound for. This transaction was within 2 weeks after the lapse of 5 years from the date of the notes. Under such circumstances we are inclined to think that the receipt was written acknowledgment of the debt evidenced by the notes, but, whether it was so or not, we do not think that the record discloses such an unreasonable delay in demanding payment of the notes as would operate to bar them under the statute, 5 months later, when the plaintiff in error substituted the new policy and made the partial payment in controversy.

It is recommended that the judgment of the district court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.