[No. 13684. Department Two. March 21, 1917.]

EUREKA CEDAR LUMBER & SHINGLE COMPANY, *Appellant*,

v. FRED KNACK, *Respondent*.[1]

LIMITATION OF ACTIONS—REMOVAL OF BAR — ACKNOWLEDGMENT— PAYMENT—ACCEPTING CREDIT AFTER STATUTE HAS RUN—STATUTES. A payment upon a debt after the statute of limitations has run removes the bar of the statute, and there is in effect a cash payment, where, after the statute had run, credit was given upon the debt to the amount of an independent debt not barred by the statute, due to defendant from plaintiff, after which defendant agreed to pay the debt to plaintiff; in view of Rem. Code, § 176, providing that no acknowledgment or new promise, shall take the case out of the operation of the statute, unless it is in writing and signed but that this shall not alter the effect of any payment of principal or interest; and § 177 providing that, when any payment of principal or interest shall have been made upon any existing contract, if such payment be made after the same shall have become due, the limitation shall commence to run from the time the last payment is made.

SAME—STATUTES—EFFECT—"EXISTING" CONTRACT. The statute of limitations does not affect the existence of the contract and a payment upon a contract after the statute has run is a payment upon an "existing" contract.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered April 22, 1916, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Theo. B. Bruener* and *C. W. Hodgdon*, for appellant.

*Wm. E. Campbell*, for respondent.

[1]Reported in 163 Pac. 753.

PARKER, J. — The plaintiff, Eureka Cedar Lumber & Shingle Company, seeks recovery of a balance due upon the purchase price of lumber and shingles sold by it to the defendant, Fred Knack, in the year 1911. Trial in the superior court without a jury resulted in findings and judgment in favor of the defendant, rested upon the ground that the action had not been commenced within the time limited by law. From this disposition of the cause, the plaintiff has appealed to this court.

The evidence is not before us. We have only to do with the question of what judgment should be rendered upon the facts found by the trial court. The controlling facts appearing in the findings may be summarized as follows: Between February 6 and August 8, 1911, appellant sold and delivered to respondent lumber and shingles of the value of $527.53, which sum respondent promised and agreed to pay therefor. Thereafter respondent made payments thereon on July 11 and December 23, 1911, so that there then remained due and unpaid a balance amounting to $321.68. No further payments or credits were made reducing this balance, as we shall assume for argument's sake, until February, 1915, more than three years following the payment made on December 23, 1911. It is, therefore, apparent that appellant's cause of action is barred by the three-year statute of limitation relating to recovery upon unwritten contracts (Rem. Code, § 159), unless the bar of the statute has been avoided by a credit of $24.50 which was made by appellant upon the account in respondent's favor in February, 1915, which appellant claims was assented to by respondent under such circumstances as to amount to a payment upon the debt and acknowledgment of the balance due thereon at that time.

The facts leading up to and attending the making of this credit in respondent's favor are as follows: In October, 1914, appellant placed the account, duly itemized, and also showing an item of $32 drayage in addition to the $321.68 bal-

ance, in the hands of its attorney, C. W. Hodgdon, for collection, and Hodgdon thereupon so notified respondent. Thereafter respondent went to Hodgdon's office, where they went over the items of the account together, "and the said defendant made no objections to said account as exhibited, and agreed to pay the same [save the drayage item], provided the said plaintiff would deduct from said account the amount of certain work and materials which the said defendant claimed to have performed for and furnished to the said plaintiff sometime in the year 1914; that the said Hodgdon promised to take the matter up with the said plaintiff and to advise the said defendant." Thereafter, in compliance with instructions from appellant, Hodgdon advised respondent to make out a statement of his claim against appellant and that, if found correct, the amount would be deducted from the balance due from him, and "the said defendant did then and there agree to make out a statement of his said account for said work and labor performed and materials furnished, and also then and there promised and agreed to pay the balance of said account which had been exhibited to him by the said Hodgdon, as hereinabove stated, just as soon as he could." Thereafter, early in February, 1915, respondent handed the statement of his claim to Hodgdon and "requested the said Hodgdon to credit his account with the amount of said statement, being in the sum of $24.50, which the said Hodgdon then and there agreed to do." "The said defendant then and there again promised to pay the balance of said account shortly. On February 15, 1915, the said Hodgdon notified the said defendant, by letter, that his account against the plaintiff, in the sum of $24.50, was correct, and that he, the said Hodgdon, had given the said defendant credit." Thereafter, respondent having refused to pay the balance due upon appellant's account, this action was commenced on the 28th day of February, 1915.

Contention is made in appellant's behalf that the findings of the trial court render it plain that the understanding between respondent and Hodgdon, as attorney for appellant, and the credit given respondent in pursuance thereof, had the same legal effect as if respondent had actually paid $24.50 in cash in February, 1915, and requested credit therefor upon appellant's account. We think there is no escape from this interpretation of the dealings between respondent and Hodgdon, as found by the trial court. Plainly the $24.50 was an existing debt in favor of respondent and against appellant, and was claimed as such by respondent. It was also a debt having no connection with appellant's claim and was not barred by the statute of limitation, as appellant's claim would have been but for the credit so given. Clearly respondent intended that such credit should have the same effect as a cash payment upon his debt to appellant. The facts found by the trial court as to respondent's promises made in connection with the giving of the credit, we think, leave little room for controversy upon this question of fact.

Did the fact that this payment of $24.50 was so made by respondent after the statute had fully run its three-year course remove the bar of the statute? We think it did. The sections of Rem. Code relating to extension of the time of the running of, and the removal of the bar of the statute after it has run its course, are the following:

"No acknowledgment or promise shall be sufficient evidence of a new continuing contract whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." Rem. Code, § 176.

"When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall

have become due, the limitation shall commence from the time the last payment was made." Rem. Code, § 177.

This is not a question of a removal of the bar of the statute by an acknowledgment or promise in writing. We quote § 176, and especially the concluding clause thereof, as having some bearing upon the meaning of the language of § 177. Manifestly there would be no necessity of invoking the provision of § 176 to remove the bar of the statute except after the statute has run its course, because there would not until then be any occasion to acknowledge or promise in writing to pay a debt in order to avoid the bar of the statute. This suggests the thought that the words, "but this section shall not alter the effect of the payment of any principal and interest," as used in § 176, have reference to the removal of the bar of the statute after it has run its course, as well as the extension of the time of the running of the statute before it has run its course. This lends support to the view that the language of § 177, relating to the tolling of the statute by payment, contemplates that payment shall have the same effect whether made before or after the statute has run its course. Such was the holding of the Wisconsin court interpreting a statute similar to ours in *Engmann v. Estate of Immel*, 59 Wis. 249, 18 N. W. 182, and *Marshall v. Holmes*, 68 Wis. 555, 32 N. W. 685. In *Ebersole v. Omaha Nat. Bank*, 71 Neb. 778, 99 N. W. 664, having under consideration this question in the light of a statute much like ours, the court said:

"The statute enacts (Code Civ. Proc., § 22): 'In any cause founded on contract, when any part of the principal or interest shall have been paid, . . . an action may be brought in such case within the period prescribed for the same, after such payment.' The section provides that the debt may also be revived by a new promise or acknowledgment in writing, so that it would seem that a part payment does not effect the removal of the bar, because of being evidence of a new promise or of an acknowledgment, which are void if not written, but because of its own proper vigor."

The Missouri court seems to have reached this conclusion rested upon an exception or saving clause apparently found in their statute relating to removal of the bar of the statute by written acknowledgment, reading as follows:

"Nothing contained in the two preceding sections shall alter, take away or lessen the effect of a payment of any principal or interest made by any person whatever."

which is in substance the same as the concluding clause of our § 176, above quoted, and is not a positive declaration of the effect of payment, as is found in our § 177, above quoted. *Shannon v. Austin,* 67 Mo. 485; *Johnson v. Johnson,* 81 Mo. 331; *Miller v. Miller,* 169 Mo. App. 432, 155 S. W. 76.

Now, even apart from § 176 and the decisions of the courts above noticed, we would see no escape from reading the language of § 177 as meaning that a payment made upon the debt after the statute had run its course would be as effectual to remove the bar as a payment made before would extend the running of the statute, for we are plainly told by the language of that section that it is the payment *"upon any existing contract"* which starts the statute to running anew from the time of such payment. It is elementary that the statute does not affect the legal existence of the contract but only the remedy (*Miller v. Miller, supra*); hence it is plain that a payment upon such contract is a payment upon a legally *"existing contract,"* and, therefore, extends the running, or removes the bar, of the statute, regardless of the time of payment. The exact question, apparently, has not been before this court, but in *Damon v. Leque,* 17 Wash. 573, 50 Pac. 485, and *Stubblefield v. Mc-Auliff,* 20 Wash. 442, 55 Pac. 637, observations are made by the court which plainly indicate that the court recognized this to be the law, though such observations may not have been necessary to the decision in those cases.

We conclude that the facts found by the trial court plainly indicate that the credit of $24.50, asked for and given

to respondent upon appellant's account, was intended by him as a voluntary payment thereon the same as if he had actually paid that sum in money, and that he thereby acknowledged the existence of the debt due from him to appellant so as to remove the bar of the statute, as provided by §§ 176 and 177, Rem. Code, above quoted. That was, we think, such an acknowledgment of the debt as satisfied the rule so tersely stated by Judge Ellis when speaking for the court in *Arthur & Co. v. Burke*, 83 Wash. 690, 145 Pac. 974, as follows:

"The payment must be made under such circumstances as to show an intentional acknowledgment by the debtor of his liability for the whole debt as of the date of payment from which arises a new implied promise, supported by the original consideration, to pay the residue."

The trial court found that there is due to appellant from respondent, after allowing the credit of $24.50, the sum of $297.18, with interest, which appellant would be entitled to recover "were it not for the fact that, in the opinion of the court, said account is barred by the statute of limitations." What we have said leads to the conclusion that appellant is entitled to have judgment in its favor against respondent for that sum, together with legal interest from the 23d day of December, 1911. The judgment of the trial court is reversed, with direction to enter its judgment in harmony with the views herein expressed.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.